UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BROWNFIELD,

       Plaintiff,

v.

PINNACLE FINANCIAL PARTNERS,
ASSURED FINANCIAL PARTNERS,
BRADFORD CAPITAL MANAGEMENT GROUP,
JASON RYAN ZANDSTRA,
DAVID ARAM TOSSONIAN, and
CHRISTOPHER DAVID GANAHL,

       Defendants.
_____/

<u>COMPLAINT</u>

## I.    Introduction

1.    This is an action for damages and other relief brought against the defendant debt collectors and credit identity thieves for unlawfully acquiring and using plaintiff's stolen credit and personal financial information to contact plaintiff and extort the payment of money from plaintiff through false and unlawful threats of litigation, prosecution and other adverse consequences, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay alleged loans. This scheme, and similar ones operated by

1

seemingly countless entities located in and around Corona, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often, the perpetrators falsely inflate the amount of the alleged debt; the consumer is falsely accused of having committed a crime; the alleged debt is time-barred; the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties; the caller does not own or otherwise have any right to collect any debt from the consumer; the loan has been repaid or otherwise previously resolved and there is no debt owed; and/or the account and related, alleged debt are counterfeit. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      These unlawful debt collection schemes remain epidemic. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

4.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

5.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

6.      Defendants have knowingly and unlawfully acquired, transferred, shared among themselves and used, plaintiff's stolen personal and financial information, in furtherance of their joint enterprise to contact and coerce the payment of money from plaintiff through false threats of prosecution and litigation, claiming money due on a fake debt, in violation of the FDCPA and DPPA.

## II.    Jurisdiction

7.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.    Parties

8.    Plaintiff David Brownfield is an adult, natural person. Mr. Brownfield is a

"consumer" and "person" as the terms are defined and used in the FDCPA.

9.    Defendant Pinnacle Financial Partners ("PFP") is a California corporation,

incorporated on or about October 4, 2013, California Corporate Number C3611091. The PFP

Articles of Incorporation named defendant Jason Ryan Zandstra, 16166 Limerick Street,

Riverside, California 92503 as registered agent. On July 18, 2014, PFP filed a Statement of

Information with the California Secretary of State, stating that PFP is in the business of

"Collections," and falsely representing that the PFP "Principal Executive Office" and "Principal

Business Office" are located at 420 North McKinley Street, "Suite 111-461," Corona, California

92879, which is merely a private mailbox rented from The UPS Store No. 7182. The PFP

Statement of Information also stated that the CEO, Secretary, CFO and Director of PFP is

defendant Jason Ryan Zandstra, 420 North McKinley Street, "Suite 111-461," Corona, California

92879. On June 17, 2019, PFP filed another Statement of Information, stating that there had been

no changes from the prior Statement of Information filed July 18, 2014. PFP uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

PFP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

to be owed or due another. PFP is a "debt collector" as the term is defined and used in the

FDCPA.

10.    On May 8, 2015, PFP filed an application (No. R-201504530) with the County

of Riverside, California, to do business using the assumed name "Brookstone United Capital."

11.     PFP purportedly does business at 43280 Business Park Drive, Temecula, California 92590.

12.     PFP claims to be doing business at 1191 Magnolia Avenue, "Suite D-303," Corona, California 92879, but the address is merely a private mailbox rented by defendants from The UPS Store No. 1876, and shared by PFP with other defendants, including defendant Bradford Capital Management Group. Prior to July 2019, The UPS Store No. 1876 was located at 1191 Magnolia Avenue, Suite D, Corona, California 92879. In or about July 2019, The UPS Store moved a few doors down to 1185 Magnolia Avenue Suite E, Corona, California 92879. Regardless, defendants have continued to maintain private mailbox number 303 at The UPS Store No. 1876.

13.     PFP and its employees and agents conduct their debt collection scam using multiple email addresses, including pinnaclefinancialpfp@gmail.com.

14.     On May 8, 2015, defendants anonymously registered the internet domain www.brookstoneunitedcapital.com through Domains By Proxy, LLC and GoDaddy.com, LLC. The domain links to an active internet website that states "our team will strive to succeed on collecting your unpaid debt." The website provides a contact telephone number of 888-463-5927. The website states: "See us in person! We love our customers, so feel free to visit during normal business hours," but does not provide a business address. The names and addresses of the owners of the domain name, related email addresses, and other subscriber and billing information related to the domain, will need to be obtained from GoDaddy.com, LLC in discovery.

15.     On or about September 7, 2019, defendants ran an advertisement on the internet website, www.indeed.com, seeking a person to work as a "3rd party collections closer," at

"Brookstone United Capital" in Temecula, California. The advertisement touted that the company has "25 dialers." According to www.indeed.com, defendants have ran similar advertisements using the name "Assured Financial Partners."

16.    PFP through its employees and agents, directly and indirectly, participated in the unlawful debt collection practices to collect an alleged debt from Mr. Brownfield that are described in this complaint.

17.    Defendant Assured Financial Partners ("AFP") is a California corporation, incorporated on or about October 4, 2013, California Corporate Number C3611092. The AFP Articles of Incorporation named defendant David Aram Tossonian, 11358 Turning Bend Way, Riverside, California 92505 as registered agent. On July 18, 2014, AFP filed a Statement of Information with the California Secretary of State, stating that AFP is in the business of "Collections," and falsely representing that the AFP "Principal Executive Office" and "Principal Business Office" are located at 420 North McKinley Street, "Suite 111-624," Corona, California 92879, which is merely a private mailbox rented from The UPS Store No. 7182. The AFP Statement of Information also stated that the CEO, Secretary, CFO and Director of AFP was defendant David Aram Tossonian, 420 North McKinley Street, "Suite 111-624," Corona, California 92879. On May 23, 2018, AFP filed another Statement of Information, stating that the CEO, Secretary, CFO, Director and registered agent of AFP is defendant Jason Ryan Zandstra, 420 North McKinley Street, "Suite 111-624," Corona, California 92879. AFP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. AFP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. AFP is a "debt collector" as the term is defined and used in the FDCPA.

6

18.    On April 1, 2015, AFP became licensed (No. 1252912) by the City of Riverside, California to do business at 11810 Pierce Street, Suite 100, Riverside, California 92505, with a telephone number of 866-517-7459 and website of www.firstequityalliance.com.

19.    On May 8, 2015, defendants anonymously registered the internet domain www.assuredfinancialpartners.com through Domains By Proxy, LLC and GoDaddy.com, LLC. The domain links to an active internet website that falsely describes AFP as a debt collection law firm that uses the following "Recovery Process" to collect consumer debts:

> "Your debtor is notified that if they are not willing to pay, and their account is deemed eligible for litigation, we will attempt to get a court order against them to do most, if not all of the following:  File a lien against any property of real estate they may own.  Examine their personal and business assets.  File all court methods available and invoke all specified remedies permitted by law to collect this debt.  Ask the court for reasonable collection costs and attorney fees. An investigation pf their assets and liabilities.  Notify the debtor that his/her failure to pay this debt now can cause them to be possibly denied when they go to rent  an apartment, buy a house, purchase a car, or obtain credit cards. Attach their bank accounts or garnish their wages if they are employed. If they own a business, attach their incoming receivables or confiscate their business equipment.

The website provides a contact telephone number of 866-517-7489 and email address of support@assuredfinancialpartners.com. The names and addresses of the owners of the domain name, related email addresses, and other subscriber and billing information related to the domain, will need to be obtained from GoDaddy.com, LLC in discovery.

20.    On August 2, 2016, AFP filed an application (No. R-201609730) with the County of Riverside, California, to do business using the assumed name "First Equity Alliance."

21.    On July 22, 2016, defendants anonymously registered the internet domain www.firstequityalliance.com through Domains By Proxy, LLC and GoDaddy.com, LLC. The domain links to an active internet website that falsely describes "First Equity Alliance" as a debt collection law firm. The website falsely states: "Immediately after you submit an account to us

for collection, it goes straight from the Claims Processing Center to General Counsel for immediate review. Our attorney driven business model has resulted in almost three times the recoveries for our clients vs a typical collection agency." The website falsely states that First Equity Alliance uses the identical "Recovery Process" that is described on the website at www.assuredfinancialpartners.com. The website provides a telephone number of 866-853-2641 and a business address of 11810 Pierce Street, Suite 100, Riverside, California 92505. The names and addresses of the owners of the domain name, related email addresses, and other subscriber and billing information related to the domain, will need to be obtained from GoDaddy.com, LLC in discovery.

22.    AFP through its employees and agents, directly and indirectly, participated in the unlawful debt collection practices to collect an alleged debt from Mr. Brownfield that are described in this complaint.

23.    Defendant Bradford Capital Management Group ("BCMG") is a California corporation, incorporated on or about May 23, 2013, California Corporate Number C3568798. According to the BCMG Statement of Information filed April 12, 2016 with the California Secretary of State, BCMG is in the business of "Debt Brokerage" and maintains the BCMG "Principal Executive Office" and "Principal Business Office" at 1191 Magnolia Avenue, "Suite D-303," Corona, California 92879, but the address is merely a private mailbox rented by defendants from The UPS Store and shared by BCMG with other defendants, including defendant Pinnacle Financial Partners. The BCMG Statement of Information also states that the CEO, Secretary, CFO, Director and Registered Agent of BCMG is defendant Christopher David Ganahl, 28502 Las Arubas, Laguna Niguel, California 92677. On April 12, 2019, BCMG filed a

8

Statement of Information for BCMG, stating that there was no change in information from the Statement of Information filed for BCMG on April 12, 2016. BCMG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BCMG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BCMG is a "debt collector" as the term is defined and used in the FDCPA.

24.     On November 20, 2017, BCMG filed an application (No. R-201714995) with the County of Riverside, California, to do business using the assumed name "PFP."

25.     On August 15, 2016, BCMG filed an application (No. R-201610355) with the County of Riverside, California, to do business using the assumed name "Alliance Recovery Solutions."

26.     On August 2, 2013, BCMG filed an application (No. R-201308243) with the County of Riverside, California, to do business using the assumed name "Garretson Financial Services."

27.     BCMG through its employees and agents, directly and indirectly, participated in the unlawful debt collection practices to collect an alleged debt from Mr. Brownfield that are described in this complaint.

28.     Defendant Jason Ryan Zandstra is a natural person, age 41, purportedly residing at 18936 Summerleaf Lane, Riverside, California 92504, and previously residing at 16166 Limerick Street, Riverside, California 92503. Mr. Zandstra is an owner, director, officer, manager, employee and agent of defendants PFP and AFP. Mr. Zandstra uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Zandstra regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Mr. Zandstra is a "debt collector" as the term is defined and used in the FDCPA.

29.     On March 26, 2010, the Department of Homeland security terminated Mr. Zandstra from his job as a Customs Border Agent at the Indio Border Patrol Station in Indio, California, on the basis that Mr. Zandstra had associated with a member of the Inland Empire Skinheads, which at the time was under investigation, for among other things, drug-related crimes and murder.

30.     Mr. Zandstra (a) created the collection policies and procedures used by PFP, AFP and BCMG, and their employees and agents, (b) managed the daily collection operations of PFP and AFP, (c) oversaw the application of the collection policies and procedures used by PFP and AFP, and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by PFP, AFP and BCMG, and their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by PFP, AFP and BCMG, and their employees and agents, all who participated and acted in concert, to obtain Mr. Brownfield's personal and financial information, and use that information to contact and falsely threaten Mr. Brownfield with litigation, prosecution and other adverse consequences unless Mr. Brownfield paid money to defendants, as described in this complaint.

31.     Mr. Zandstra directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Brownfield that are described in this complaint.

32.     Defendant David Aram Tossonian is a natural person, age 33, purportedly residing at 11358 Turningbend Way, Riverside, California 92504. Mr. Tossonian is an owner, director, officer, manager, employee and agent of defendants PFP and AFP. Mr. Tossonian uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

Mr. Tossonian regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another. Mr. Tossonian is a "debt collector" as the term is defined

and used in the FDCPA.

33.    Mr. Tossonian (a) created the collection policies and procedures used by PFP,

AFP and BCMG, and their employees and agents, (b) managed the daily collection operations of

PFP and AFP, (c) oversaw the application of the collection policies and procedures used by PFP

and AFP, and their employees and agents, (d) ratified the unlawful debt collection policies and

procedures used by PFP, AFP and BCMG, and their employees and agents, and (e) had

knowledge of, approved and ratified the unlawful debt collection practices used by PFP, AFP and

BCMG, and their employees and agents, all who participated and acted in concert, to obtain Mr.

Brownfield's personal and financial information, and use that information to contact and falsely

threaten Mr. Brownfield with litigation, prosecution and other adverse consequences unless Mr.

Brownfield paid money to defendants, as described in this complaint.

34.    Mr. Tossonian directly and indirectly participated in the unlawful efforts to collect

an alleged debt from Mr. Brownfield that are described in this complaint.

35.    Non-party Bishop Canyon Corp ("BCC") is a California corporation, incorporated

on or about June 1, 2018, California Corporate Number C4156489. According to the BCC

Statement of Information filed July 29, 2019 with the California  Secretary of State, BCC is in

the business of "Collections" and maintains the BCC "Principal Executive Office" and "Principal

Business Office" at 1185 Magnolia Avenue, "Suite D-330," Corona, California 92879, but the

address is merely a private mailbox rented by defendants from The UPS Store. The BCC

Statement of Information also states that the CEO, Secretary, CFO, Director and Registered

Agent of BCC is defendant David Aram Tossonian, 1185 Magnolia Avenue, "Suite D-330,"

Corona, California 92879. It will need to be determined in discovery whether BCC participated

in the unlawful efforts to collect an alleged debt from Mr. Brownfield that are described in this

complaint.

36.    Non-party Columbia Financial Group, Inc ("CFG") is a Delaware corporation,

registered to transact business in California. According to the CFG Statement of Information

filed January 24, 2019 with the California  Secretary of State, CFG is in the business of

"Collections" and maintains the CFG "Principal Executive Office" and "Principal Business

Office" at 1191 Magnolia Avenue, "Suite D-382," Corona, California 92879, but the address is

merely a private mailbox rented by defendants from The UPS Store. The CFG Statement of

Information also states that the CEO, Secretary, CFO and Director of CFG is defendant David

Aram Tossonian, 1191 Magnolia Avenue, "Suite D-382," Corona, California 92879. It will need

to be determined in discovery whether CFG participated in the unlawful efforts to collect an

alleged debt from Mr. Brownfield that are described in this complaint.

37.    Defendant Christopher David Ganahl is a natural person, age 37, residing at

28721 Calle Vista, Laguna Niguel, California 92677-7465, or perhaps 28502 Las Arubas, Laguna

Niguel, California 92677-7558. Mr. Ganahl sometimes uses telephone number 949-636-0091 and

email address christopherganahl@gmail.com to operate defendants' debt collection scam. Mr.

Ganahl is an owner, director, officer, manager, employee and agent of defendants PFP, AFP and

BCMG. Mr. Ganahl uses interstate commerce and the mails in a business the principal purpose

of which is the collection of debts.  Mr. Ganahl regularly collects or attempts to collect, directly

or indirectly, debts owed or due or asserted to be owed or due another. Mr. Ganahl is a "debt collector" as the term is defined and used in the FDCPA.

38.    Mr. Ganahl (a) created the collection policies and procedures used by PFP, AFP and BCMG, and their employees and agents, (b) managed the daily collection operations of BCMG, (c) oversaw the application of the collection policies and procedures used by BCMG and its employees and agents, (d) ratified the unlawful debt collection policies and procedures used by PFP, AFP and BCMG, and their employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by PFP, AFP and BCMG, and their employees and agents, all who participated and acted in concert, to obtain Mr. Brownfield's personal and financial information, and use that information to contact and falsely threaten Mr. Brownfield with litigation, prosecution and other adverse consequences unless Mr. Brownfield paid money to defendants, as described in this complaint.

39.    Mr. Ganahl directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Brownfield that are described in this complaint.

40.    Non-party Charleston Capital Group ("CCG") is a California corporation, incorporated on or about September 10, 2013, California Corporate Number C3602335. According to the CCG Statement of Information filed June 16, 2016 with the California Secretary of State, CCG is in the business of "Collections," and the CEO, Secretary, CFO and Director of CCG is defendant Christopher David Ganahl. It will need to be determined in discovery whether CCG participated in the unlawful efforts to collect an alleged debt from Mr. Brownfield that are described in this complaint.

41.    Defendants and their employees and agents have used multiple unregistered

aliases to conduct their unlawful debt collection scheme, including "Prime Capital Solutions,"

3380 La Sierra Avenue, "Suite 104-572," Riverside, California 92503, telephone number 888-

706-5521, email address admin@primecapitalsolutions.net. The address is merely a private

mailbox rented by defendant Christopher David Ganahl from non-party Catwenus Inc., doing

business as The UPS Store No. 5671.

42.    Defendants have used numerous telephone numbers to conduct their debt

collection scam. Telephone numbers currently in use include: 844-873-4592; 844-947-3724; 888-

214-1539; 888-559-0566; 888-597-9815; 888-706-5521; 888-721-9384; 888-746-3654; and 951-

268-7558.

43.    All defendants (and other entities to be identified in discovery and named as

additional. defendants in this lawsuit) are intricately bound together and combine their efforts in

a joint and common enterprise and use concerted attempts to collect debts allegedly owed by

consumers throughout the United States. Defendants and the other entities operate collectively

and together, in such as way that they are collecting debts for the benefit of each other, and

making each participant jointly and severally for the unlawful acts of each of the other

participants.

44.    An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v.

National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman &

Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15

F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

45.    A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of

Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth

Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

46.    In 2008, plaintiff Davie Brownfield had a checking account (No. 7653785571)

with Fifth Third Bank that was used by Mr. Brownfield to purchase goods and services for

personal, family and household purposes. Any resulting obligation of Mr. Brownfield to pay

money to Fifth Third Bank was a "debt" as the term is defined and used in the FDCPA.

47.    On or about July 8, 2008, Fifth Third Bank closed the account.

48.    In 2008, Fifth Third Bank charged off the account, with an alleged and total

unpaid balance of approximately $1,000.00.

49.    Mr. Brownfield denies owing any money to Fifth Third Bank or any other entity

in connection with the account. Mr. Brownfield refuses to pay any money to Fifth Third Bank or any other entity in connection with the account.

50.     Even if Mr. Brownfield did owe any money in connection with the account, the debt is no longer judicially enforceable by operation of the applicable statute of limitations. Stated differently, the account and alleged debt are time-barred.

51.     On or about June 16, 2010, Fifth Third Bank sold the charged-off account to non-party United Credit Recovery, LLC ("UCR"), that was owned and operated by non-party Leonard G. Potillo, III.

52.     On June 4, 2014, Mr. Potillo was charged in federal court with multiple counts of wire fraud, bribery and money laundering. According to the indictment, Mr. Potillo, through his company UCR, purchased as much as $10 billion of charged-off consumer overdraft debt from multiple financial institutions (including Fifth Third Bank), paying a few pennies on the dollar, and then resold the dubious portfolios of accounts to numerous third-party purchasers with "fictitious Affidavits of Correctness/Assignments" and other fake chains of title and other paperwork, all created by Mr. Potillo and UCR "on a mass scale." On January 12, 2016, Mr. Potillo was sentenced to 46 months in prison for his crimes. *USA v. Leonard G. Potillo, III,* United States District Court, Middle District of Florida, Case No. 6:14-cr-00128-JA-GJK-1.

53.     Relatedly, in January of 2014, the State of Minnesota sued UCR for creating fake paperwork to create or bolster the chains of title for charged-off consumer overdraft debt purchased by UCR from multiple financial institutions (including Fifth Third Bank), by creating computer-generated affidavits with bank logos, and cutting and pasting supposed notarized signatures of bank officials onto the fake documents to make them look authentic. The complaint

alleged that UCR used account information acquired from the banks to create hundreds of thousands of fake affidavits purporting to describe and verify debts supposedly owed by consumers, which were then used by UCR to sell and resell the specious debt to third-party purchasers.

54.     Mr. Brownfield's private personal and financial information associated with his time-barred Fifth Third Bank account has been compromised, stolen, and sold and resold to scam operators around the country, for the purpose of contacting and threatening Mr. Brownfield with litigation, prosecution and other adverse consequences in efforts to coerce the payment of money from Mr. Brownfield to satisfy a time-barred or non-existent debt and stolen or counterfeit account.

55.     Defendants somehow acquired Mr. Brownfield's private personal and financial information, along with information regarding the Fifth Third account, and then took efforts to coerce the payment of money from Mr. Brownfield, through false and unlawful threats of litigation, prosecution and other adverse consequences, as described below.

56.     On August 20, 2019, defendants' male employee and agent placed a call from a blocked number to Mr. Brownfield's girlfriend's cellular telephone and spoke with Mr. Brownfield's girlfriend. In the ensuing conversation, defendant's employee and agent made the following statements to Mr. Brownfield's girlfriend:

      a)     A lawsuit had been filed against Mr. Brownfield, "Case No. 275202."

      b)     The caller was a "process server with the "Hancock County Processing Department" and was "on the way" to Mr. Brownfield's residence to "serve court papers" on Mr. Brownfield.

    c)     Mr. Brownfield needed to call telephone number 888-746-3654 for more information.

57.    On August 20, 2019, Mr. Brownfield made a call to telephone number 888-746-3654. The call was answered by defendants' employee and agent who identified herself as "Natalie Martinez" with "Prime Capital Solutions." In the ensuing conversation, defendant's employee and agent made the following representations to Mr. Brownfield:

    a)     Mr. Brownfield owed more than $3,000.00 on an unpaid Fifth Third Bank checking account that was closed in 2008.

    b)     Prime Capital Solutions was a law firm.

    c)     A lawsuit had been filed against Mr. Brownfield, "Case No. 275202."

    d)     A judgment was going to be entered against Mr. Brownfield for more than $5,000.00.

    e)     Liens were going to be placed against Mr. Brownfield's residence and motor vehicles.

    f)     Mr. Brownfield's wages were going to be garnished.

    g)     Mr. Brownfield had written bad checks and committed a crime.

    h)     A warrant was being issued for Mr. Brownfield' arrest.

    i)     Mr. Brown was "facing serious charges."

    j)     Mr. Brownfield would be prosecuted.

58.    On August 20, 2019, in response to defendants' false and extortionate threats of litigation, liens, garnishments, arrest, prosecution, and other adverse consequences, Mr. Brownfield used his debit card with Regions Bank and made a payment to defendants in the

amount of $200.00. According to Regions Bank, the payment was deposited into a merchant

account belonging to defendant Pinnacle Financial Partners.

59.     On August 20, 2019, defendants sent an email from

pinnaclefinancialpfp@gmail.com to Mr. Brownfield. Attached to the email was a receipt from

"Pinnacle Financial," telephone number 888-597-9815, acknowledging Mr. Brownfield's

payment of $200.00. Also attached to the email was a one-page letter on the letterhead of "Prime

Capital Solutions, 3380 La Sierra Ave Ste 104-572, Riverside, CA 92503, Phone 888-706-5521,

Email: admin@primecapitalsolutions.net," falsely stating that Mr. Brownfield owed $3,000.00

on the account, and falsely stating that once Mr. Brownfield paid that amount to defendants, "our

trade line [regarding the account] with the major credit bureaus will be updated to PAID IN

FULL." If signed, the letter purported to authorize periodic payments to defendants from Mr.

Brownfield's debit card account with Regions Bank. Mr. Brownfield refused to sign the

authorization. Also attached to the email was a document captioned "DocuSign Certificate of

Completion," stating that the documents had been originated by Pinnacle Financial Partners,

1191 Magnolia Avenue, "Suite D-303," Corona, California 92879, which is a private mailbox

rented by defendants from The UPS Store No. 1876, and shared by PFP with other defendants,

including defendant Bradford Capital Management Group. A copy of the email and related

documents are attached to this complaint as Exhibit A.

60.     On August 28, 2019, defendants' employee and agent who identified herself as

Natalie Martinez placed a call from telephone number 951-268-7558 to Mr. Brownfield and

demanded the payment of money. Mr. Brownfield refused to make the demanded payment and

terminated the call.

61.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats of litigation, prosecution, and other adverse consequences, often times on debts that are not owed, counterfeit or time-barred, and through the use of consumers' stolen account and personal information.

62.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

63.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Brownfield's alleged debt.

64.     Defendants and their employees and agents falsely represented that Mr. Brownfield owed a debt that is not owed.

65.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

66.     Defendants and their employees and agents falsely represented that they had the legal right to collect the alleged debt.

67.     Defendants and their employees and agents falsely represented that they are a attorneys and a law firm.

68.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Brownfield's personal and financial information, in an effort to coerce the payment of money from Mr. Brownfield.

69.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

70.    Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

71.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Brownfield to collect the alleged debt.

72.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Brownfield to collect the alleged debt.

73.    Defendants and their employees and agents falsely represented that a process server was being dispatched to Mr. Brownfield's residence and place of employment in efforts to serve Mr. Brownfield with a summons and complaint that had been filed against Mr. Brownfield in efforts to collect the alleged debt.

74.    Defendants and their employees and agents falsely represented that they were process servers affiliated with the county government.

75.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Brownfield had committed a crime.

76.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Brownfield had been charged with a crime.

77.    Defendants and their employees and agents falsely represented and falsely implied that a warrant had been issued for Mr. Brownfield's arrest.

78.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Brownfield would be arrested if Mr. Brownfield did not pay money to defendants.

79.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Brownfield would be prosecuted if Mr. Brownfield did not pay money to defendants.

80.     Defendants and their employees and agents falsely and wrongfully threatened to file a lawsuit against Mr. Brownfield to collect a time-barred debt.

81.     Defendants and their employees and agents falsely represented and falsely implied that the alleged debt was adversely affecting Mr. Brownfield's credit.

82.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Brownfield paid money to defendants, then defendants would report the payments to the consumer reporting agencies and presumably improve Mr. Brownfield's credit score.

83.     Defendants and their employees and agents falsely represented that if Mr. Brownfield did not pay money defendants, an additional $2,500.00 in court costs and attorney fees would be added to Mr. Brownfield's account balance, and a judgment would be placed against Mr. Brownfield in the amount of more than $5,000.00.

84.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Brownfield did not pay money to defendants, then defendants would place a lien on Mr. Brownfield's residence and motor vehicles.

85.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Brownfield did not pay money to defendants, then defendants would garnish Mr. Brownfield's wages.

86.     Defendants did not intend to file a lawsuit against Mr. Brownfield in any court in efforts to collect the alleged debt.

87.     No defendant has ever filed any lawsuit in any court to collect any debt from any

consumer.

88.     The FDCPA states that it is unlawful for a debt collector may not engage in any

conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of any debt.  15 U.S.C. § 1692d.

89.     The FDCPA states that it is unlawful for a debt collector to use criminal means

to harm the reputation of any person.  15 U.S.C. § 1692d(1).

90.     The FDCPA states that it is unlawful for a debt collector to place a telephone call

without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that the debt collector is vouched for or affiliated with the United States or any State.  15

U.S.C. § 1692e(1).

92.     The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

1692e(2)(A).

93.     The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the compensation which may be lawfully received by any debt collector

for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

94.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

95.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the

seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

96.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

97.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

98.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

99.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

100.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

101.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

102.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

103.    The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

104.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (10), (11), (13) and (14), and 1692f and 169f(1).

105.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

106.    Defendants and their employees and agents failed to timely send to Mr. Brownfield a notice containing the information required by 15 U.S.C. § 1692g(a).

107.    A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

108.    The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

109.    A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

110.    Defendants violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b), by placing the above-described call to the cellular telephone belonging to Mr. Brownfield's girlfriend and discussing the alleged debt with Mr. Brownfield's girlfriend.

111.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

112.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

113.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

114.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

115.    In connection with efforts to collect an alleged debt from Mr. Brownfield, defendants obtained and used personal information regarding Mr. Brownfield and Mr. Brownfield's girlfriend from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

116.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the

subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the

database, the subscriber is confronted with a screen that requires the subscriber to affirmatively

state the permissible purpose under the DPPA for which the subscriber is requesting the personal

information.

117.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

118.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person
> knowingly to obtain or disclose personal information, from a motor vehicle
> record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false
> representation to obtain any personal information from an individual's motor
> vehicle record.

18 U.S.C. § 2722.

119.    The DPPA also states:

> "personal information" means information that identifies an individual, including
> an individual's photograph, social security number, driver identification number,
> name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

120.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a
> motor vehicle record, for a purpose not permitted under this chapter, shall be
> liable to the individual to whom the information pertains, who may bring a civil
> action in a United States district court.

18 U.S.C. § 2724(a).

121.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained. 18 U.S.C. § 2721(b).

122.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Brownfield.

123.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Brownfield and others.

124.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Brownfield and others was derived from motor vehicle records.

125.    Alternatively, the entity that obtained the personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Brownfield and others that was derived from motor vehicle record.

126.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

127.    Defendants knowingly obtained, disclosed and used personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

128.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose the personal information obtained from the database.

129.    No defendant had consent, permission, authorization or waiver to obtain the personal information from the database.

130.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d

1065, 1079 (D.Minn. 2014).

131.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

132.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

133.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

134.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

135.    Plaintiff incorporates the foregoing paragraphs by reference.

136.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692b;

b)    Defendants violated 15 U.S.C. § 1692c;

c)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

d)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

e)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

137.    Plaintiff incorporates the foregoing paragraphs by reference.

138.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages, but not less than liquidated damages in the amount of $2,500.00,

pursuant to 18 U.S.C. § 2724(b)(1);

b)    Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)    Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)    An injunction prohibiting defendants from further obtaining or using plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)     An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)     An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: September 17, 2019                    /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            6140 28th Street SE, Suite 115
                                            Grand Rapids, Michigan 49546-6938
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com